# Dean *et al.* *versus* Fuller.

*Subscribing Witness to Deed, extent to which Testimony of is admissible.—Power of Court of Equity to cancel Deed or Contract.—Evidence required for this purpose.*

1. Though subscribing witnesses to a *will* may be asked their opinion of the testator's capacity to make a will, at the time of their attesting it, yet in case of a *deed* they must testify to facts only on the point of the sanity or capacity of the grantor; they cannot give their opinion as to his competency to contract, for the *execution* of the deed is all that is attested by them.

2. Therefore it was not error in the court below to overrule questions propounded to the subscribing witness in a deed "whether in his opinion the plaintiff had an unusual or undue influence upon" the grantor, "at the time of the execution of the deed," and "whether in your opinion was 'the grantor' in a fit condition to make the deed to 'the grantee,' or to deal with him at all at the time;" for the facts to show undue influence were for the jury, who alone were to draw the conclusion whether or not it existed. while the questions offered, if admitted, would have proved the conclusion without the facts.

3. Where the evidence offered to set aside a deed was not such as would justify a chancellor in decreeing its cancellation, or a common law court in declaring it inoperative, no fraud, legal incapacity, or mistake being shown, it was not error to direct the jury to find a verdict for the plaintiff, who, in an action of ejectment brought by him to recover the land conveyed therein, claimed under the alleged fraudulent deed. Insufficient evidence need not be submitted to a jury.

ERROR to the Common Pleas of *Fayette county.*

This was an action of ejectment brought to September Term 1858, by James Fuller against David Jackson, George Dean, and Rezin Frost, for 240 acres of land in Reaston township.

Before the case was tried Jackson died, and the case was tried against the tenants in possession. The plaintiff claimed under a deed, duly executed and delivered to him by David Jackson, dated August 19th 1856, which was placed on record on the 3d day of September 1856.

It appeared, from the uncontradicted statement of the counsel for the plaintiff in error, who was defendant below, that after the execution of the above deed, Jackson, the grantor, had applied to the court to have it cancelled, on the ground that it had been procured from him by fraud, undue influences, &c., and that he had obtained a verdict and judgment sustaining his claim. That

thereupon Fuller brought this action, which resulted in a verdict and judgment against him; and that the court below set aside the verdict, and directed a new trial.

The facts which were relied on by the defendants below for rescinding the deed were these:—

James Fuller the grantee, was the brother-in-law of David Jackson the grantor, and according to the evidence of both parties was a favourite and confidential adviser of Jackson and wife, who had no children. David Jackson made a will in the presence of his wife, and upon consultation with her, in which he devised the land in dispute to the brothers and sisters of Mrs. Jackson, James Fuller being one of them. In this will this land was divided into eight shares, and James Fuller received two shares and one half, while the others received but one share each. Some time after the making of this will Mrs. Jackson died, when it was thought that portions of the will would have to be altered, and it was alleged by Jackson that Fuller procured the alteration at a time when his mind was weighed down by grief at the loss of his wife, and that by reason of his weakness both of mind and body, occasioned by his constant watching and anxiety during the sickness of his wife, as well as by his very advanced age (he being over eighty years at the time), the grantee was enabled to overreach and defraud him. It was in evidence that Fuller stayed with Jackson the night after his wife's funeral, and made arrangements with him to convey this farm, and that one week after the funeral he came to the house of Jackson, and had the deed drawn up according to his own wish.

The scrivener testified that when he came to the consideration, he asked what consideration was to be mentioned? that some one said, one dollar; but Fuller said, "Say one thousand dollars, and other services"—which was done. That Jackson stated several times during the transaction that he wished Fuller to take his wife's place in the distribution of his property; and also that they frequently went into a little side-room and conversed, out of the hearing of the scrivener, who was Jackson's nearest neighbour, who had been a friend and adviser for years, and who was made the executor of the will that was written that day.

He also testified that Jackson objected to making this deed, unless Fuller would pay $2000 out of it to his brothers and sisters; that Fuller said "no," and the deed was executed as he wished it. He also stated that Jackson said, several times, "James, I am afraid I am giving you too much; I don't intend to give you but $6000;" and that Jackson estimated this property to be worth between $8000 and $9000. At the time this deed was made, a will was signed by Jackson, giving to James Fuller the one-half of his personal property, which, according

[Dean *et al. v.* Fuller.]

to the evidence, was worth from $10,000 to $12,000; also, that when Jackson expressed a wish to give a portion of this personal property to David Fuller and John Fuller (his brothers), James objected, saying that they deserved nothing, and the whole amount was then given to himself, he having to pay out. $2000 to other heirs. The scrivener testified that in all instances everything that Fuller asked was inserted in these writings.

On the trial, the defendants below proposed to ask the witness to the deed this question: "In your opinion was David Jackson in a fit condition to make that deed to Judge Fuller, or to deal with him at all?" Plaintiff objected to the question, and the court sustained the objection. There was testimony given to show that Jackson's mind was very much affected by the loss of his wife, that he lay around the house, on the floor, walked his room at late hours of the night, and gave many manifestations of overwhelming grief. The witness stated also that on the night of her death he gave positive indications of mental derangement; that he said he was glad she was dead, and while the corpse was lying in the room he was talking about the weight of cattle, the price of cattle, and other unseasonable subjects. Evidence was also given for the purpose of showing that Fuller did not consider Jackson capable of taking care of his own interests at the time the deed was made, and that after this transaction Fuller said that he had urged Jackson to make this conveyance at the time he did, because he knew if he had waited longer he would not have done it.

In answer to the foregoing, the plaintiff offered the witnesses to the will and the deed, and others, to show that Jackson, the grantor, was competent, at the time, to transact business, and had made this disposition voluntarily and with a full knowledge of what he was doing, giving as a reason for it that Fuller had done "a great deal for him and his wife," and that "now he was going to recompense him for it;" that there was nothing peculiar in Jackson's manner and conversation at his wife's funeral; and that Jackson and wife had said repeatedly that Fuller had done more for them than all their relatives put together; that he had lived with them when he was a boy, and when they were poor, and that they never would have been worth what they were worth if it had not been for him, &c.

. The defendants requested the court to instruct the jury:

1. That if there was a confidential relation existing between David Jackson and the plaintiff, and they believed, from all the circumstances, that Jackson gave him more than he intended to do at the solicitation of the plaintiff Fuller, the deed would be void, and plaintiff cannot recover.

2. If David Jackson's mind was impaired by old age, and by the calamity that had befallen him, and this deed was obtained

[Dean *et al. v.* Fuller.]

without consideration, the grantor Jackson could avoid it, and the plaintiff is not entitled to recover.

3. If the jury believe that the mind of David Jackson was troubled, and uneasy at the time, and that the plaintiff urged him to make this conveyance without consideration, then the plaintiff is not entitled to recover.

The court below, (GILMORE, P. J.) on the last trial, withdrew the case from the jury on the ground that there was no sufficient evidence of fraud and undue influence to justify them in setting aside the deed, and directed them to return their verdict for the plaintiff.

There was a verdict and judgment accordingly; whereupon the defendant sued out this writ, and assigned for error:

1. The refusal of the court below to permit the scrivener to express his opinion as to whether Fuller had undue or unusual influence over Jackson at the time the deed was executed.

2. Refusing to permit defendant to ask "if Jackson was in a fit condition to make the deed to Fuller, or to deal with him at all at the time."

3. Negativing the defendant's points.

4. And charging that—"We are, therefore, of opinion that even supposing, from the whole evidence, the mind of the grantor Jackson, at the time he executed this deed, was at least up to legal capacity; that if it was merely imbecile, about which the evidence is conflicting, it would not be a reason for cancelling the deed in the absence of evidence of a confidential relation, of which we say there is no sufficient evidence, your verdict will therefore be for the plaintiff. "

*Fuller & Ewing,* for plaintiff in error.—The court below, in answer to the first point, erred in assuming that the only confidential relations, between parties to a contract, that should induce the court to interfere, without proof of direct fraud, are those of attorney and client: Guardian & Ward, &c., &c. See 1 Story's Eq. §§ 234, 307, 314; Hagedorn *v.* Beasley, 14 Vesey 279; 8 Cowen's R. 361; 1 Madd. Ch. Pr. 224, 225. Courts will relieve wherever an undue advantage is taken of the party, under circumstances which mislead, confuse, or disturb the just result of his judgment: 1 Story's Eq. §§ 251, 235.

The testimony of the scrivener, who was the subscribing witness to the deed, was admissible under the authority: 1 Gr. Ev, 440; Wogan *v.* Small, 11 S. & R. 141.

*Kaine & Patterson,* for defendant in error.—1. The idea embraced in the question which was not allowed by the court below, and which is the subject of the first assignment of error, was that there was a confidential relation between Fuller and Jack-

[Dean *et al. v.* Fuller.]

son. As this was to be judged of from the facts, there was no error in rejecting it. So far as it related to Jackson's condition, the question was irrelevant and indefinite. Whether it related to his body or his mind, did not appear. The answer, as an opinion, would have been valueless without the facts on which it was based: Graham *v.* Pancoast, 6 Casey 98.

The attempt to show mental weakness was a failure, but even if not, there must be proof of imposition or undue influence: Graham *v.* Pancoast, 6 Casey 98; Nace *v.* Boyer, Id. 110. See Delameter's Estate, 1 Wh. 374, as to power of the court to cancel an executed contract.

The case cited from 14 Vesey 274, is unlike this in every particular.

The opinion of the court was delivered, November 25th 1861, by

THOMPSON, J.—The first exception in this case was in overruling the question propounded to the witness, whether "in his opinion the plaintiff had an unusual or undue influence upon David Jackson at the time of the execution of the deed." There were no special or qualifying circumstances to give countenance to such a question. It was improper beyond all doubt. It was an effort to put the witness in the jury box to draw an inference without facts, which the jury could only draw from facts. Facts to prove undue influence were to be given to the jury, and they were to draw hence the conclusion whether it existed or not. The conclusion and not the facts was attempted to be proved here—that was within the province of the jury, and not of the witness.

2. The second exception was in refusing to allow the question, "in your opinion was David Jackson in a fit condition to make that deed to Judge Fuller, or to deal with him at all at the time." This exception stands in much the same ground as the last.

The rule seems to be, that witnesses to a will may be asked their opinion of the testator's capacity to make a will at the time of attesting it, although other persons are ordinarily inadmissible, at least unless their opinion is founded upon facts testified to by themselves in the cause: 2 Greenl. Ev. § 691. And in the same section the reason is given, and is that "the attesting witnesses are regarded in the law as persons placed round the testator, in order that no fraud may be practised upon him in the execution of the will, and to judge of his capacity:" Id. 1 Jarm on Wills 62. Not so in regard to deeds; they are good without subscribing witnesses, and when attested, the execution is all that is attested by the witnesses: 2 Dal. 214. The authorities cited relate to wills, between which and deeds, it will be seen, a manifest difference exists. On the point of sanity or

capacity of a grantor to make a deed, the subscribing witnesses must testify to facts, as other witnesses are required to do on the question of competency to contract, the fact being collateral to the object of their attestation.

We have carefully considered the evidence in this case, and as the purpose of its introduction was in effect to set aside the deed of Jackson to Fuller, we think it was entirely insufficient on any ground claimed for it, and that the court was entirely right in so holding it, and in directing a verdict for the plaintiff. Why refer insufficient evidence to the jury? Blocker *v.* Dougan, MS., answers this inquiry fully. If there had been controverted facts, it would have been a case for the action of the jury. But the insufficiency did not consist in facts being disproved, but in the absence of sufficient facts to justify a chancellor in declaring the cancellation of the deed, and with us in declaring it to be inoperative—where and when this may be done. See Delameter's Estate, 1 Wh. 374; Graham *v.* Pancoast, 6 Casey 98; Nace *v.* Boyer, 10 Id. 110. The evidence being insufficient, it was not error to answer the defendant's points. We discover no error in the case, and the

Judgment is affirmed.