## Hepler *v.* Hosack.

*Deed—Mental capacity to execute deed—Evidence.*

In an action of ejectment where the case turns upon the mental capacity of the defendant's grantor, questions relating to consideration for the deed, may be asked witnesses, not for the purpose of contradicting the consideration mentioned in the deed, but for the purpose of showing the business incapacity or mental condition of the grantor at the time he executed the deed.

*Deed—Mental capacity of grantor—Evidence—Opinions of witnesses.*

Where a case turns upon the mental capacity of a grantor in a deed, witnesses who have testified fully as to the grantor's condition at the time he executed the deed, may be interrogated as to their opinion as to his capacity to execute the paper. Dean v. Fuller, 40 Pa. 474, distinguished.

*Deed—Delivery—Mental capacity of grantor.*

Where the case turns upon the mental capacity of the grantor in a deed, and the evidence tends strongly to show that the grantor was not legally competent to make a deed, and that his action as to the delivery of the deed was purely passive, the question of the delivery of the deed is for the jury.

*Deed—Mental capacity of grantor—Evidence—Insanity—Question for jury—Ejectment.*

In an action of ejectment where the case turned upon the mental capacity of the defendant's grantor, the evidence for the plaintiff was in effect that the deed was signed about two hours before the grantor died, and when he was in extremis; that the defendant upon being informed of the fatal illness of the grantor, who was his brother, requested a justice of the peace to go with him to his brother's house to prepare the deed. There was no evidence to show that the grantor requested the justice to write the deed, or that he was consulted about the consideration named in it, or that he desired to convey his interest in the land. On the contrary the uncontradicted testimony of the justice was that after he had written the deed and read it to the grantor, that the latter's assent to it was by " a nod only, but it was a weak one " and that when it was presented to him to sign, " he made no effort himself to write his signature " but that the scrivener placing the pen in the sick man's hand, and taking the hand in his own, wrote the signature. The justice testified that at the time the deed was executed the grantor was "notoriously unfit" to transact any business with which he was not familiar. *Held*, that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 16, 1900.• Appeal, No. 36, Oct. T., 1900, by defendant, from judgment of C. P. Washington Co., May T., 1899, No. 131, on verdict for plaintiff in case of Laura Hepler, Lavina Amos and Belle Letherman v. Ard M. Hosack. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Ejectment for tract of land in West Bethlehem township. Before Taylor, J.

The facts are fully stated in the opinion of the Supreme Court.

Ard M. Hosack was asked the question :

" Q. I see Mr. Hosack, that the deed says ' in consideration

of $900, the receipt whereof is hereby acknowledged;' did you pay him that $900, while Gayman was there?"

Objected to as incompetent and irrelevant.

The Court: Well, they are attacking this deed, and they propose to attack want of consideration.

Mr. Birch: I ask for an offer, if the court please.

Mr. McCracken: The proposition is to examine the witness, he being the party to the suit, generally as to what transpired at the time of the execution of the deed, and particularly while 'Squire Gayman was present, as tending to shed light upon the question of the grantor's capacity to transact important legal business at that time; and we propose, as part of that examination, as to what transpired at that time, to ask about the payment of the money.

Mr. Birch: Objected to as incompetent and irrelevant; whether the consideration is mentioned in the deed, whether it was paid or not, is not admissible in evidence to affect the validity of the deed.

Mr. McCracken: It is not being offered for that purpose.

The Court: The purpose for which the testimony is offered we think makes it competent, counsel disclaiming that it is done for the purpose of contradicting the consideration of the deed. The objection is overruled and offer admitted for the purpose stated; bill sealed for the defendant. [1]

The same witness was asked the question:

" Q. How long did you have the inventory and appraisement as made by them before you brought it and the deed up to Mr. Birch?"

Mr. Birch: Objected to as incompetent for the reason that this is a matter that occurred long after the deed was made, after the death of the testator, and cannot be admissible to affect the transaction between him and his brother.

Mr. McCracken: It is admissible as bearing on the bona fides of the transaction.

The Court: Yes, this is a party, and the door is open wide.

Objected to as incompetent and irrelevant, for the reason that the matters inquired about occurred since the death of the grantor in the deed, and as incompetent for the further reason that the amount of the estate of the grantor is not admissible for the purpose of affecting the deed.

The Court: The objection is overruled and the offer admitted. This being a party, the grantee in the deed, and the deed being attacked in this suit, we think it part of the res gestæ. Bill sealed for defendant. [2]

" Q. Mr. Hosack, you said yesterday that the farm conveyed by this deed contained about 140 acres? A. More or less. Q. Now the Ricketts farm that is spoken of here, how much does that cover? A. A hundred and—"

Mr. Birch: Objected to as incompetent; there is no action here concerning the Ricketts farm.

Mr. McCracken: No, but it bears upon the question of the good faith of the consideration.

Mr. Birch: Objected to as incompetent for the reason that the consideration is not evidence to validate or invalidate a deed.

Mr. McCracken: It is not, as we said yesterday on two occasions, for that purpose. It is for the purpose of bearing on the question of John Hosack's business capacity at the time the deed was executed, and the good faith of this man who has been his brother in every sense of the word, and his partner in business, and the man that nursed him, and occupied the confidential relation and so forth.

The Court: For that purpose it can be admitted.

Mr. Birch: Objected to as incompetent and irrelevant for the reason that the parties themselves having fixed the consideration and reduced it to writing, parol evidence is inadmissible.

Objection overruled and the offer admitted for the purposes stated in the offer, strictly; bill sealed for defendant. [3]

Mrs. Delilah Pheaster was asked this question:

" Q. Now Mrs. Pheaster, after the time—the hour Mrs. Amos called—in your opinion, was John Hosack, or was he not, conscious of what was going on about him? "

Objected to as incompetent.

" A. Why, I don't think he—"

Objected to for the reason that the witness is not qualified to give an opinion regarding the competency of the grantor to execute the deed in question.

The Court: We think the same rule applies to an act of alienation as would to an act of testation; and the witness having stated the facts, and being in the house at the time, we think

she is competent to express an opinion. The weight of it is for the jury. Bill sealed for defendant. [4]

" Q. Now, you may answer the question, Mrs. Pheaster. In your judgment was or was not John Hosack conscious of what was going on about him during the time, say from 10 o'clock, the time Mrs. Amos was there, up to the time of his death? A. Well it looked to me as though like he wasn't. Q. Well, did or did not you see John Hosack near the time that Jacob Gayman was there? A. Yes, sir, just a few minutes before Mr. Gayman came. Q. Did you see him just after he went away? A. Yes, sir. Q. Well, now, Mrs. Pheaster, in your judgment was John Hosack in such condition at that time —would you consider him competent to transact important legal business? A. No, sir, I wouldn't. "

Mr. Birch: Objection renewed and move to strike it out, if the court please.

Objection overruled ; bill sealed for defendant. [5]

Mrs. Lavina Amos was asked this question:

" Q. Now, Mrs. Amos, from observation while you were there, during an hour or more, was or was not at that time John Hosack capable of transacting important legal business? A. Please state the question. Q. I say during the time that you were there, from your observation, was or was not John Hosack capable, mentally and physically, of transacting important legal business? A. He was not. "

Mr. Birch: We object to that, if the court please.

Objection overruled ; bill sealed for the defendant.

Mr. Birch: I move that it be stricken out.

The Court: The same ruling as to that question when asked a former witness. [6]

Jacob Gayman was asked this question:

" Q. Now, Mr. Gayman from what you saw and heard during the one half hour or one hour that you spent in the sick room of John Hosack on the morning of January 16, would you or would you not say that John Hosack at that time was capable of transacting important legal business? "

Mr. Birch : Objected to for the reason that the witness can only testify as to facts as they occurred, and is not competent to give his opinion as to his capacity to contract.

The Court: No, I think in a case of this kind, Mr. Birch,

there is no doubt about the witness's competency to express an opinion. Objection overruled; bill sealed for defendant. [7]

"Q. Now, Mr. Gayman, from what you saw and heard that morning in the sick room of John Hosack, did you at the time believe that John Hosack was conscious of what was going on about him?"

Objected to as incompetent for the reason that the witness can tell what happened, but as to his opinion as to his condition is not competent.

The Court: Well, what is your best belief, based on what you saw there?

"A. I do not believe that he was fully conscious of everything that was transpiring there. Q. Well, now, Mr. Gayman, taking into consideration not only his mental but also his physical condition at the time you were there, to the best of your judgment was John Hosack capable of transacting important legal business?"

·Objected to as incompetent and irrelevant for the reasons already stated.

Objection overruled and bill sealed for defendant. [8]

"Answer the question, Mr. Gayman. A. I think not, sir."

Dr. T. R. Storer was examined as follows:

"Q. What time of day was this? A. About eight o'clock or a little after. Q. Now, Dr. Storer, from what you observed there at the Hosack house on Monday morning while you were present, from what you know of the disease that had fastened itself upon John Hosack, would you say whether or not John Hosack was capable at the time you saw him last of transacting important legal business?"

Objected to as incompetent for the reasons heretofore stated.

Objection overruled, and bill sealed for defendant. [9]

"Q. What would be your answer, Doctor? A. Well, I think he was hardly capable— Q. Hardly capable of transacting important legal business?"

The court charged in part as follows:

[Where a party signs his name to an instrument of writing of this kind, and his acknowledgment is taken, and the paper would be then thrown down on a table, and when it would be asked by the justice what should be done with it, the grantee should

give directions as to how it should be disposed of, and the grantor sitting by made no objections, and the disposition that the grantee directed to be made of it was such that the grantor could not get it again, but that he was to get it and called for it, why that is evidence of such a delivery as requires the court to submit the question to you whether or not there was not a delivery of the deed at the same time it was executed.] [10]

Plaintiffs' points among others were as follows:

2. If at the time said deed was executed, the jury from all the evidence believe that John Hosack was physically and mentally incapable of transacting important legal business, then the deed was not properly executed and the verdict should be for the plaintiffs. *Answer:* That is affirmed, gentlemen of the jury, with these remarks: If the jury find the deed in question was executed as described by the witness, when John Hosack, the grantor, was so far gone mentally as not to know and understand the nature of the act in which he was engaged; but mere physical and mental weakness shown in a case of this kind is not enough to defeat a contract of this character or a testamentary paper, if the party executing it knew and understood the act in which he was engaged and it was done of his free will and not the will of another operating upon his mind so as to destroy his free will or agency, and substitute the mind of another for the one acting. [11]

8. If the jury believe from all the evidence that John Hosack did have sufficient mental capacity at the time of the alleged execution of the deed in question to make such execution, but gave no direction as to its delivery after his death, then a delivery by Jacob Gayman after John's death would not be such a delivery as to convey the title in said land to Ard M. Hosack, and the verdict should be for the plaintiffs. *Answer:* We answer this point as follows: If the jury find when the deed had been signed by John Hosack in the manner detailed by the 'Squire who took the acknowledgment, and that it was signed after being read over to him and his acknowledgment then taken, and the 'Squire laid the deed on the table and asked in the presence of the grantor and grantee what should be done with it, and the grantee said: " You take it home with you, 'Squire, and keep it until I call for it," and under said direction took the deed, put it in his pocket and took it home with him, and

all this took place in the presence, hearing, and with the knowledge and consent of the grantor, John T. Hosack, who made no objection to this disposal of the deed in any manner, and could have done so if it was not in accordance with his desire that the 'Squire should take the deed and keep it until Ard M. Hosack called for it, then this would be such a delivery of the deed that John Hosack, the grantor, could not afterwards legally recall, and is proper evidence of delivery by the grantor to be submitted to the jury as to whether or not it amounted to a delivery. [12]

Defendant's point was as follows :·

1. Now, the defendant submits a point, that under all the evidence in the case the verdict must be for the defendant. *Answer :* That point is refused for the same reason we refuse the point asking binding instructions on the part of the plaintiff, and that is that it is a question for the jury. [13]

Verdict and judgment for plaintiffs for the interest claimed by them in the land. Defendant appealed.

*Errors assigned* were (1–9) rulings on evidence, quoting the bill of exceptions ; (10–13) above instructions, quoting them.

*T. F. Birch*, for appellant.—This being a deed, witnesses are not qualified to express an opinion as to the competency of the grantor; they must testify to facts only on the sanity or capacity of the grantor: Dean v. Fuller, 40 Pa. 474; DeHaven's App., 75 Pa. 337; Elcessor v. Elcessor, 146 Pa. 359; McMasters v. Blair, 29 Pa. 302.

Where a grantor executes and acknowledges a deed before a magistrate, which has been left there for that purpose by the agent of the grantor and grantee, and leaves the instrument with the magistrate without instructions, the delivery is absolute: Blight v. Schenck, 10 Pa. 285.

There can be no inference in the absence of evidence against the delivery: Stinger v. Com., 26 Pa. 422; Pennsylvania Co. for Ins. on Lives v. Dovey, 64 Pa. 260; Elcessor v. Elcessor, 146 Pa. 363.

Allowing for the argument, evidence to set aside an act of alienation, to be the same as to affect testation, the law permits no inference of undue influence: Tawney v. Long, 76 Pa. 106 ;

Leech v. Leech, 1 Phila. 244; Worrall's App., 110 Pa. 347; Crothers v. Crothers, 149 Pa. 201; Yorke's Est., 185 Pa. 61; Harrison's App., 100 Pa. 458; Dean v. Negley, 41 Pa. 317.

Courts will not permit solemn deeds to be annulled upon any such weak and flimsy testimony as is found in this record: Kraus v. Stein, 173 Pa. 221; Monticelli v. Friedman, 193 Pa. 545; Penna. R. Co. v. Shay, 82 Pa. 198; Wylie v. Mansley, 132 Pa. 65; Eddy's App., 109 Pa. 406.

*M. L. A. McCracken,* with him *B. E. McCracken* and *Byron E. Tombaugh,* for appellees.—A subscribing witness may give his opinion of the testator's capacity, without the facts on which it is founded, other witnesses may not; but after they have testified to facts, their opinion may be placed before the jury: Titlow v. Titlow, 54 Pa. 216; Bricker v. Lightner's Exr., 40 Pa. 199; Pidcock v. Potter, 68 Pa. 342; Logan v. McGinnis, 12 Pa. 27.

All the witnesses except Dr. Storer testified to facts within their own knowledge before being asked for an opinion. Whether those facts were such as entitled their opinion to go to the jury was a question for the court: First Nat. Bank of Easton v. Wirebach's Exr. 12 W. N. C. 150; Wilson v. Mitchell, 101 Pa. 503; Rambler v. Tryon, 7 S. & R. 90; Newhard v. Yundt, 132 Pa. 324; Shaver v. McCarthy, 110 Pa. 339.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1901:

This is an action of ejectment for the undivided one fourth of 140 acres of land in West Bethlehem township, Washington county. The defendant is Ard M. Hosack, and the plaintiffs are the children of the deceased sister of defendant and of John T. Hosack, who died intestate on January 16, 1899, leaving to survive him the parties to this action. The father of Ard M. and John T. Hosack, by his will probated January 7, 1873, devised to his two sons two tracts of land in West Bethlehem township, Washington county, known as the "Rickets" and "Home" farms. The former contains 144 acres and the latter 140 acres. This land was held by the two brothers as tenants in common, after their father's death, until January 16, 1899, the day on which John T. Hosack died. This action is for an undivided interest in the "Home" farm. The plain-

tiffs allege that upon the death of their uncle, John T. Hosack, who was the owner of the undivided one half of the tract, the title of the one half of his interest therein became vested in them, and that, therefore, they are entitled to recover in this action the undivided one fourth of the tract. The defendant denies that his brother, at the time of his death, was the owner of any interest in said land, or in the "Rickets" farm, and alleges that his brother conveyed to him his undivided interest in both tracts of land on January 16, 1899. This is the only defense the defendant sets up in this action.

On the trial of the cause in the court below the plaintiffs attacked the validity of the deed from John T. Hosack to his brother Ard M. Hosack. They seek to invalidate the deed on the ground that at the time of its execution and delivery the grantor was incapacitated, mentally and physically, to such an extent as to render him incapable of making a deed. John T. Hosack executed the deed between twelve and one o'clock of the day it is dated. He died about 3 : 30 P. M. of the same day. He had been unwell for some time prior to his death. He was visited by a physician the evening prior to and the morning of the day he died. The scrivener wrote the deed immediately before its execution in the room of the deceased, and attested it and took the grantor's acknowledgment.

The determination of the issue in this case requires the consideration of the sanity or mental condition of John T. Hosack at the time it is alleged he executed and delivered the deed to his brother. If he understood what he was doing, what business he was transacting, and voluntarily executed and delivered the deed with the intention of conveying his undivided interest in the property to his brother, then John T. Hosack's title to the land in controversy passed to the defendant and the plaintiffs could not recover. This question was submitted to the jury by the learned judge of the court below with very full instructions, and a verdict was rendered for the plaintiffs.

The assignments of error relate to the admission of certain testimony offered by the plaintiffs, to portions of the charge, to the answers of the court to the plaintiffs' second and eighth points, and to the refusal of the defendant's point that under all the evidence the verdict should be for the defendant.

The plaintiffs' testimony, covered by the first three assign-

ments, tended to show the business incapacity or mental condition of John T. Hosack at the time he executed the deed, and was clearly admissible for that purpose. The defendant objected to the admissibility of the evidence of the plaintiffs embraced in the fourth, fifth, sixth, seventh, eighth and ninth assignments, for the reasons that the witnesses were not qualified to give an opinion regarding the competency of John T. Hosack to execute the deed, and could not be interrogated as to his competency " to transact legal business." All the witnesses except Dr. Storer, who is an expert, and, therefore, entitled to express an opinion without stating the facts on which he bases it, testified fully to the facts in regard to Hosack's condition before they were interrogated in regard to their opinion as to his capacity to execute the deed. We think the facts disclosed by their testimony were sufficient to afford a foundation for the opinions expressed by the witnesses. This being true, there could be no objection to the evidence : Doran v. McConlogue, 150 Pa. 98. In the case of Dean v. Fuller, 40 Pa. 474, relied upon by the appellant to support his contention in this respect, the offer was to ask the opinion of the attesting witness as to the competency to make the deed before the witness had stated the facts on which he based his opinion. This court held that the evidence was properly excluded. The difference between the question asked the witness in this case and the witnesses in the case at bar is apparent.

The witnesses having stated the facts on which they based their conclusions, we cannot see that it was error to permit the plaintiffs to ask them their opinion as to the competency of the defendant's grantor to transact important legal business. The reply to this question, founded on the facts given to support it, would enable the jury to determine the grantor's fitness to make the deed. It will be conceded that the execution and delivery of a deed is an important business matter. A negative answer to the question complained of would justify the jury in finding the incompetency of the grantor to execute the deed, and an affirmative reply would clearly be evidence to sustain a contrary finding. An answer responsive to the question would, therefore, be evidence from which the jury could determine the issue presented for its consideration. We think there was no error

in admitting the question. For the same reason the eleventh assignment is not sustained.

The tenth and twelfth assignments complain of the court's instructions as to the delivery of the deed. We think they were as favorable to the defendant as he had, under the evidence, any right to expect. The question of the delivery of the deed was for the jury, as was also the credibility of the witness relied on to establish it. The language used by the learned judge in submitting the question could not have misled the jury. The delivery of the deed, like its execution, turned on the mental condition of the grantor. The learned judge told the jury that the turning point in the case was the mental condition of the grantor at the time the deed was executed and acknowledged, and thus the question of the delivery of the deed was practically eliminated from the case.

The thirteenth assignment alleges error in the refusal of the defendant's point requesting the court to withdraw the case from the jury and direct a verdict for the defendant. We agree with the learned trial judge that when the deed was signed John T. Hosack was undoubtedly in extremis. His attending physician saw him the night before he died, and told the defendant that he thought him a very sick man and that he did not expect him to recover. He also saw Hosack between eight and nine o'clock on the following morning, when he found him much worse, " going down rapidly," and testifies that he expected his death during the day. That morning the defendant went to 'Squire Gayman and requested him to come to his, John's, house to prepare the deed. Between twelve and one o'clock the 'Squire arrived at the house, and by the defendant's direction wrote the deed. Aside from the testimony of Ard M. Hosack there is nothing to show that John T. Hosack requested 'Squire Gayman to write the deed or that he was consulted about the consideration named in it, or that he desired to convey his interest in this land to his brother. On the contrary, the uncontradicted testimony of the scrivener is that after he had written the deed and read it to John, his assent to it was by "a nod only, but it was a weak one ;" and when it was presented to John to sign " he made no effort himself to write " his signature to it. The scrivener, placing the pen in the sick man's hand and taking the hand in his own, wrote the

name of John T. Hosack to the deed which is alleged to be "the act and deed" of the man whose name is subscribed thereto. 'Squire Gayman testifies that, at the time the deed was executed, Hosack was "notoriously unfit" to transact any business with which he was not familiar. The only testimony in the case that he had any knowledge of an intention to convey his interest in these lands to Ard M. Hosack or knew anything of the transaction prior to the execution of the deed, is that of the defendant himself. It is unnecessary to refer to the testimony in detail on this branch of the case. It was amply sufficient, if believed, to justify the jury in finding that the conveyance of January 16, 1899, was not the deed of John T. Hosack and did not convey his interest in the land in dispute to the defendant. Whatever may have been his intention as to the disposition of his property by deed or his desire to convey it to his brother, the evidence produced on the trial of this case leaves but little doubt that John T. Hosack failed while in his conscious moments to carry such intention into execution.

The assignments of error are overruled and the judgment is affirmed.